# GERALDO FERREIRA *v.* RONALD PRINGLE ET AL.
## (SC 16229)

Borden, Katz, Palmer, Sullivan and Foti, Js.*

Argued November 3, 2000—officially released February 13, 2001

* The listing of justices reflects their seniority status on this court as of the date of argument.

*Robert I. Reardon, Jr.*, with whom was *Scott D. Cam-assar*, for the appellant (plaintiff).

*Raymond J. Plouffe, Jr.*, for the appellees (defendants).

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether a condition that allegedly caused injuries to the plaintiff, Geraldo Ferreira, is, as a matter of law, a "highway defect" within the meaning of General Statutes § 13a-149,[1] the defective highway statute. The trial

---

[1] General Statutes § 13a-149 provides: "Damages for injuries by means of defective roads and bridges. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

court concluded that the allegations of the plaintiff's complaints in two separate actions, consolidated by agreement, invoked the defective highway statute, and that, therefore, the exclusive remedy for his injuries was through § 13a-149. See *Ferreira* v. *Pringle*, Superior Court, judicial district of New London at New London, Docket No. 546848 (July 30, 1999); *Ferreira* v. *Southeast Area Transit*, Superior Court, judicial district of New London at New London, Docket No. 543390 (July 30, 1999). Because the plaintiff had not pleaded § 13a-149 as a means for recovery in either of his complaints, the trial court determined that the complaints were legally insufficient. The trial court further concluded that, because the plaintiff had not complied with the notice provisions of § 13a-149, it did not have subject matter jurisdiction over the action. Accordingly, the court rendered judgment dismissing the action. We agree with the trial court, and therefore, affirm the judgment.

The record discloses the following facts and procedural history. On June 12, 1996, the plaintiff was a passenger on a public bus in the town of East Lyme (town). As he disembarked the bus onto a grassy embankment at the shoulder of North Bridebrook Road, he tripped on the remnant of a severed steel signpost embedded in the ground and fell backward into the road where he was run over by the bus.

On November 5, 1996, the plaintiff filed a notice of intention to sue the town and its employees, pursuant to General Statutes § 7-465[2] "and other relevant stat-

[2] General Statutes § 7-465 provides: "Assumption of liability for damage caused by employees or members of local emergency planning districts. Joint liability of municipalities in district department of health or regional planning agency. (a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person

utes," for injuries sustained as a result of the alleged

or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. This section shall not apply to physical injury to a person caused by an employee to a fellow employee while both employees are engaged in the scope of their employment for such municipality if the employee suffering such injury or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of such injury. If an employee or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such employee or, in the case of his death, his dependent, shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. This section shall not apply to libel or slander proceedings brought against any such employee and, in such cases, there is no assumption of liability by any town, city or borough. Any employee of such municipality, although excused from official duty at the time, for the purposes of this section shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law. Such municipality may arrange for and maintain appropriate insurance or may elect to act as a self-insurer to maintain such protection. No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose nor unless written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any verdict rendered in such action against such employee. No mention of any kind shall be made of such statement by any counsel during the trial of such action. As used in this section, 'employee' shall include (1) a member of a town board of education and any teacher, including a student teacher doing practice teaching under the direction of such a teacher, or other person employed by such board and (2) a member of the local emergency planning committee from such municipality appointed pursuant to section 22a-601.

negligent maintenance of the grassy highway shoulder. The notice stated that the plaintiff had "tripped on a portion of a steel sign post that had been cut off just above ground level" while disembarking a public transportation bus that had stopped approximately seven feet from the location of the broken post. It further stated that the "[town] and/or its employees [had] allowed buses to stop and disembark passengers at the location where [the plaintiff had fallen]" despite the fact that there was "no sidewalk or appropriate spot for a pedestrian to disembark from a bus," thus exposing the plaintiff, pedestrians, and other "bus passengers to an unreasonable risk of injury."

The plaintiff initially filed two separate actions in the trial court. The first action was filed on August 22, 1997, against Southeast Area Transit (Southeast); Thomas C. Poirer, the operator of the bus; the state department of transportation; the town; Frederick G. Thumm, director of public works for the town; Charles Holyfield, superintendent of highways for the town; the cities of New London, Groton and Norwich; and the towns of Griswold, Waterford, Stonington, Montville, Ledyard and Groton (Southeast action). The second action, which involves the appeal currently before us, was filed on June 16, 1998, against Ronald Pringle, chief of the

Nothing in this section shall be construed to abrogate the right of any person, board or commission which may accrue under section 10-235.

"(b) Each town, city or borough which has joined with other towns, cities or boroughs to form a district department of health, pursuant to chapter 368f, or a regional planning agency, pursuant to chapter 127, shall jointly assume the liability imposed upon any officer, agent or employee of such district department of health or such regional planning agency, acting in the performance of his duties and in the scope of his employment, under, and in the manner and in accordance with the procedures set forth in, subsection (a) of this section. Such joint assumption of liability shall be proportionately shared by the towns, cities and boroughs in such district or regional planning agency, on the same basis that the expenses of such district are shared as determined under section 19a-243, or such regional planning agency as determined under section 8-34a."

Niantic fire department; Sam Peretz, director of parks and recreation for the town; and the Niantic Fire Department, Inc. (Pringle action).

As set forth in the trial court's memorandum of decision dismissing the complaints, "[t]he plaintiff alleged [in the Southeast action] that the [t]own . . . [had] 'creat[ed] an unsafe and dangerous condition for the plaintiff and other pedestrians' . . . [had] 'creat[ed] a hazard to the public' . . . '[had] not paint[ed] [the] protruding sign post . . . so that it would have been visible to the plaintiff and other pedestrians traversing said area' . . . and '[had] [a]llowed buses to stop and disembark passengers, like the plaintiff, at the location where the plaintiff [had fallen].' " Essentially, the plaintiff contended that the town had created or had participated in the creation or maintenance of a public nuisance in violation of General Statutes § 52-557n (a) (1) (C).[3]

In the Pringle action, the plaintiff essentially reiterated the same claims under to § 52-557n (a) (1) (A).

---

[3] The plaintiff made similar claims, pursuant to § 52-557n (a) (1) (A), with respect to the defendants Thumm and Holyfield, contending that they negligently had maintained the grassy area and broken signpost where the plaintiff had disembarked the bus, and that they had " '[f]ailed to erect a four foot high nine gauge chain link fence along the perimeter of [the] property in order to prevent members of the public from traversing [the] lawn where the plaintiff [had] tripped.' "

General Statutes § 52-557n provides in relevant part: "Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions. (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. . . ."

See footnote 3 of this opinion. Specifically, he contended that the defendants, "in the course of their contractual obligations or employment," had been negligent in maintaining the "grassy embankment at the shoulder" of the road.

On June 27, 1998, in the Southeast action, the defendants filed a motion to strike, attacking the legal sufficiency of the complaint on the ground that the facts alleged in the complaint concerned a highway defect, and therefore, the plaintiff's exclusive remedy was under § 13a-149. The defendants argued that, because the plaintiff had not pleaded a cause of action under § 13a-149, the complaint was legally insufficient.

While the motion to strike was pending in the Southeast action, on August 12, 1998, the defendants in the Pringle action filed a motion to dismiss the complaint for lack of subject matter jurisdiction. They argued that because the facts alleged in the complaint and the admissions contained in the plaintiff's notice of intention to sue, together with other uncontroverted evidence, indicated that the plaintiff's injury had occurred because of a highway defect, statutory notice under § 13a-149 was required in order for the court to have subject matter jurisdiction. Thereafter, the court granted the plaintiff's motion to consolidate the Southeast and the Pringle actions.

On May 12, 1999, the defendants jointly filed a supplemental memorandum and appendix in support of their motion to dismiss. Included were the plaintiff's amended complaints in the Southeast and Pringle actions; sworn affidavits of Thumm and Holyfield indicating that the location of the alleged defect was within the highway right-of-way line and that the town's highway department maintained the highway shoulder in which the alleged defect was located; and the lease agreement between the state and the town indicating

that the town had a duty, through its employees, officers, or agents, to maintain the area where the plaintiff had fallen.

On July 8, 1999, the trial court, *Mihalakos, J.*, heard arguments on the motion to strike in the Southeast action, and the motion to dismiss in the Pringle action. Citing the complaints in both actions, the plaintiff contended that his cause of action was not related to a highway defect, as that term had been interpreted. In addition, he argued that, because he had not pleaded expressly a cause of action based on § 13a-149, the trial court properly could not consider the legal sufficiency of his complaint for purposes of § 13a-149.

The trial court rejected the plaintiff's contention that it could not determine the legal sufficiency of his claims on the basis of § 13a-149, concluding that " '[e]ven if a complaint does not contain allegations concerning the violation of a statute, that complaint may still contain allegations sufficient to invoke such statute. *Mahoney* v. *Lensink*, 213 Conn. 548, 568, 569 A.2d 518 (1990).' " Thus, the trial court noted that the proper inquiry was to determine whether the plaintiff's allegations were sufficient to invoke § 13a-149. It concluded that, as a matter of law, the plaintiff's allegations in both the Southeast and Pringle actions necessarily invoked the defective highway statute, and therefore, that the plaintiff's exclusive remedy for his injuries was under § 13a-149.[4] Because neither complaint pleaded § 13a-149, the trial court determined that the complaints were legally insufficient and granted the defendants' motion to

---

[4] The court cited § 52-557n (a) (1) (C), the statute upon which some of the plaintiff's claims had been brought, which provides in part that "no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149." Thus, because the plaintiff's injuries resulted from a defective road, the court concluded that his exclusive remedy was pursuant to § 13a-149.

strike. In addition, the court concluded that because the plaintiff had not complied with the notice provisions of § 13a-149, it lacked subject matter jurisdiction over the action as a whole. Accordingly, the court granted the defendants' motion to dismiss in this case.[5]

Subsequently, the plaintiff filed a substitute complaint against the defendants in the Southeast action, again under § 52-557n, claiming, as set forth by the trial court, *Koletsky, J.*, in his memorandum of decision on the defendants' motion to dismiss, that the allegations in that complaint had "nothing to do with the road or use of the road and, [that] therefore, the highway defect statute [was] not implicated." *Ferreira* v. *Southeast Area Transit*, Superior Court, judicial district of New London at Norwich, Docket No. X04-CV-97-0118855-S (February 24, 2000). "[I]nstead of the plaintiff disembarking onto a grassy embankment at the shoulder of the road, [the substitute complaint] . . . alleged that the plaintiff [had] disembarked onto the lawn of the Niantic fire department." Id. On August 24, 1999, the defendants had moved to dismiss the second and third counts[6] of the plaintiff's substitute complaint for lack of subject matter jurisdiction. Id.

Judge Koletsky determined that "[a] comparison of the second and third counts stricken by Judge Miha-

---

[5] The plaintiff moved for reargument regarding the defendants' motion to dismiss. The trial court denied the plaintiff's motion.

[6] The second count of the substitute complaint was directed against the town pursuant to § 52-557n (a) (1) (C), alleging that the town had created or participated in the creation or maintenance of a public nuisance. *Ferreira* v. *Southeast Area Transit*, supra, Superior Court, Docket No. X04-CV-97-0118855-S. The third count of the plaintiff's substitute complaint was directed against Thumm and Holyfield pursuant to § 52-557n (a) (1) (A), alleging liability of political subdivisions of the state for the negligent acts of its employees, officers or agents. It also alleged that notice of the plaintiff's claim had been provided to the town and its employees pursuant to General Statutes §§ 7-465 (indemnification statute for municipal employees) and 7-273h (indemnification statute for transit district employees). Id.

lakos [in the original complaint in the Southeast action] and the second and third counts of the substitute complaint reveal[ed] no material differences," and noted that the allegation regarding "[t]he location of the bus, when it stop[ped] to allow the plaintiff to disembark, [had] not changed." Id. The court concluded that the plaintiff's allegations implicated the highway defect statute and, therefore, that the plaintiff's exclusive remedy was pursuant to § 13a-149. Because the plaintiff had failed to comply with the notice requirements of § 13a-149, the trial court determined that it lacked subject matter jurisdiction to hear the claims and, thus, granted the defendants' motion to dismiss.

The plaintiff appealed from the judgment of dismissal in the Pringle action to the Appellate Court, and pursuant to Practice Book § 65-2[7] and General Statutes § 51-199 (c),[8] we transferred the appeal to this court.

[7] Practice Book § 65-2 provides: "Motion for Transfer from Appellate Court to Supreme Court

"After the filing of an appeal in the appellate court, but in no event after the case has been assigned for hearing, any party may move for transfer to the supreme court. The motion, addressed to the supreme court, shall specify, in accordance with provisions of Section 66-2, the reasons why the party believes that the supreme court should hear the appeal directly. A copy of the memorandum of decision of the trial court, if any, shall be attached to the motion. The filing of a motion for transfer shall not stay proceedings in the appellate court.

"If, at any time before the final determination of an appeal, the appellate court is of the opinion that the appeal is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a motion to transfer and shall promptly decide whether to transfer the case to itself."

[8] General Statutes § 51-199 (c) provides: "The Supreme Court may transfer to itself a cause in the Appellate Court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the Constitution, the Supreme Court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the Appellate Court. The court to which a cause is transferred has jurisdiction."

On appeal, the plaintiff claims that the trial court improvidently granted the defendants' motion to dismiss. Specifically, he contends that the trial court improperly concluded that the condition that allegedly caused the plaintiff's injuries was, as a matter of law, a highway defect within the meaning of § 13a-149. He maintains that § 13a-149 is not implicated because the factual allegations in his complaint have nothing to do with the road. The plaintiff further claims that the trial court improperly determined that the failure to give notice pursuant to § 13a-149 deprived the court of subject matter jurisdiction. He argues that compliance with the § 13a-149 notice requirement was unnecessary because his cause of action was not asserted under the defective highway statute. Rather, the plaintiff maintains that he brought the action against the defendants in their individual capacities, based upon a cause of action recognized at common law.[9] He argues additionally that § 13a-149 is unconstitutionally vague as applied to the facts of this case, and that it improperly denies him a remedy for his common-law damages claims.

We conclude that, as a matter of law, the allegations contained in the plaintiff's complaint, the allegations in the affidavits submitted by the defendants, absent any response from the plaintiff, and the other uncontroverted evidence, necessarily invoke the defective highway statute. Therefore, the plaintiff's exclusive remedy for his injuries is under § 13a-149. Because the plaintiff did not comply with the notice provisions set forth therein, the trial court lacked subject matter jurisdiction over the action as a whole. Finally, we conclude that

---

[9] It is not disputed that § 13a-149 is the exclusive remedy for a claim based upon a highway defect. See *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 192, 592 A.2d 912 (1991). Therefore, the plaintiff acknowledges that if his claim is based upon a highway defect, his failure to comply with the notice requirements of § 13a-149 deprived the trial court of subject matter jurisdiction, and it properly granted the defendants' motion to dismiss.

§ 13a-149 is not unconstitutionally vague as applied to the facts of this case. Accordingly, we affirm the judgment of the trial court.

I

Before we consider the parties' claims in this case, it first is necessary to discuss the relevant history of the defective highway statute and the legal parameters of a highway defect as that term has been interpreted by this court.

"A town is not liable for highway defects unless made so by statute." *Hornyak* v. *Fairfield*, 135 Conn. 619, 621, 67 A.2d 562 (1949). Section 13a-149 affords a right of recovery against municipalities. *Martin* v. *Plainville*, 240 Conn. 105, 109, 689 A.2d 1125 (1997). Under § 13a-149, "[a]ny person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . ." We have construed § 52-557n, the statute under which the plaintiff initially brought his claim, to provide that, in an action against a municipality for damages resulting from a highway defect, the defective highway statute is the plaintiff's exclusive remedy. *Wenc* v. *New London*, 235 Conn. 408, 412–13, 667 A.2d 61 (1995); *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 192, 592 A.2d 912 (1991); see also General Statutes § 52-557n (a) (1) (C) ("no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149"). In addition, because § 7-465 (a) requires a municipality to indemnify its officers for their negligent acts, § 52-557n also bars a joint action seeking damages against a municipality and its officer for damages resulting from a highway defect. *Sanzone* v. *Board of Police Commissioners*, supra, 192.

"Whether a highway is defective may involve issues of fact, but whether the facts alleged would, if true,

amount to a highway defect according to the statute is a question of law . . . ." Id., 201; see id. (determining that "[w]hether or not the accident was caused by the defective traffic light, the plaintiffs' claim that it was caused by the defective traffic light is, as a matter of law, a claim based upon a 'defective road' "); see also *Older* v. *Old Lyme*, 124 Conn. 283, 285, 199 A. 434 (1938) ("[t]he question whether a highway is defective, the answer to which may depend on a great variety of circumstances, is in general one of fact but determination whether or not the facts found warrant, in law, the conclusions reached therefrom is open on appeal"). "[A] highway defect is '[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . .' " *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 202, quoting *Hewison* v. *New Haven*, 34 Conn. 136, 142 (1867). " '[I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair.' " *Sanzone* v. *Board of Police Commissioners*, supra, 202, quoting *Comba* v. *Ridgefield*, 177 Conn. 268, 271, 413 A.2d 859 (1979).

The duty of the municipality to use reasonable care for the "reasonably prudent traveler . . . extends to pedestrian travel as well as to vehicular traffic." (Citations omitted; internal quotation marks omitted.) *Baker* v. *Ives*, 162 Conn. 295, 299, 294 A.2d 290 (1972). To fall within the statute, " 'a plaintiff is not obligated to remain seated in a vehicle proceeding on the highway' "; id.; rather, "[a] person must [simply] be on the highway for some legitimate purpose connected with travel thereon

. . . . Nor does the defect have to be on the actual traveled portion of the highway." (Citation omitted; internal quotation marks omitted.) Id. " 'Reasonable latitude is allowed to meet the exigencies of travel.' " Id.

We now turn to the plaintiff's claims in this appeal. The plaintiff contends that the trial court improperly concluded as a matter of law that the condition causing his injuries constituted a highway defect pursuant to § 13a-149. First, he maintains that the court improperly "went beyond the facts alleged in the complaint and made a factual determination that the plaintiff [had been] injured by means of a defective road or bridge when he [actually had fallen] on a lawn." Second, he argues that "numerous facts asserted or assumed by the defendants are disputed by the plaintiff or unestablished at this point, such as whether the signpost [was] within the town's highway right-of-way; who own[ed] the signpost stub . . . who maintain[ed] the lawn area in question; whether this area [was] a 'bus stop' or otherwise part of the road; [and] whether the plaintiff was a pedestrian traveler . . . ." He maintains that "[n]one of these facts have been proven," and, therefore, that the trial court improperly granted the defendants' motion to dismiss. Finally, the plaintiff argues that the trial court improperly concluded that it lacked subject matter jurisdiction over the action. Specifically, the plaintiff contends that "[t]here is no jurisdictional issue of compliance with the notice provisions of § 13a-149" because he "is not suing a municipality"; he is suing the defendants in their "individual capacities."

We conclude that the plaintiff's claims, coupled with the uncontested facts in the record, invoke § 13a-149 because they contemplate that the plaintiff's injury occurred as a result of a defective road that the town was "bound to keep . . . in repair." General Statutes § 13a-149. Furthermore, we determine that the claims asserted against the defendants in their individual capa-

cities serve as a veiled attempt to impose liability on the municipality. Thus, the plaintiff's claim for damages against the defendants involves what can be construed only as a claim under the defective highway statute. Because the plaintiff failed to comply with the notice provisions of § 13a-149, the trial court properly determined that it lacked subject matter jurisdiction over the action, and granted the defendants' motion to dismiss.

First, although it is true, as the plaintiff contends, that the alleged defect was not located in the paved portion of the road, we repeatedly have determined that the purview of § 13a-149 is not limited solely to defects that are located *in* the road. *Hewison* v. *New Haven*, supra, 34 Conn. 142. As we noted previously, a highway defect is "[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." (Internal quotation marks omitted.) *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 202; *Hall* v. *Burns*, 213 Conn. 446, 461–62, 569 A.2d 10 (1990); *Baker* v. *Ives*, supra, 162 Conn. 300; *Rusch* v. *Cox*, 10 Conn. Sup. 521, 526, aff'd, 130 Conn. 26, 31 A.2d 457 (1943). "To hold that a defect . . . must exist in the traveled portion of the highway would run counter to our decisions and lead to results bordering on the ridiculous. . . . If in the use of the traveled portion of the highway and, as incidental thereto, the use of the shoulders for the purposes for which they are there, a condition exists which makes travel not reasonably safe for the public, the highway is defective." *Rusch* v. *Cox*, supra, 526.

Second, the plaintiff's contention that numerous facts are still in dispute, or unestablished at this point, is without merit. Indeed, these supposedly disputed facts were either admitted in the plaintiff's complaints and notice of intention to sue, or were asserted by the defen-

dants in their supporting affidavits, and thereafter were unchallenged by the plaintiff. These facts conclusively establish, as a matter of law, that the condition allegedly causing the plaintiff's injuries constitutes a highway defect under § 13a-149.

"Factual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." (Internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 312, 514 A.2d 734 (1986); see *State* v. *Rodriguez*, 180 Conn. 382, 396, 429 A.2d 919 (1980) (noting that "[t]he vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i.e. the prohibition of any further dispute of the fact by him, and any use of evidence to disprove or contradict it" [internal quotation marks omitted]); *Cassidy* v. *Southbury*, 85 Conn. 221, 224, 82 A. 198 (1912) ("It was not necessary for the defendant to prove what the plaintiff admitted by the pleadings. . . . An admission in pleading dispenses with proof, and is equivalent to proof." [Citation omitted; internal quotation marks omitted.]); see also *Futterleib* v. *Mr. Happy's, Inc.*, 16 Conn. App. 497, 504, 548 A.2d 728 (1988) (noting that judicial admissions may be expressed in different forms such as formal pleading or written stipulation). The plaintiff here admitted several facts in both the Southeast and Pringle complaints "and at no time during the trial of [those cases] did [he] seek to have [his] admission[s] withdrawn, explained or modified." (Internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, supra, 312; *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 244, 248, 492 A.2d 164 (1985) ("statements in withdrawn or superseded pleadings, including complaints, may be considered as *evidential* admissions by the party making them" [emphasis added]).

The plaintiff maintains that the allegations contained in the Southeast complaint and notice of intention to sue, are irrelevant in this appeal. This contention is without merit. The Southeast complaint was part of the consolidated Southeast/Pringle action in the trial court. Indeed, the plaintiff moved to have the cases consolidated, claiming that they "involve[d] common issues of law and fact . . . ." In any event, the allegations in the Southeast matter are admissible as judicial admissions because the plaintiff was a party in that case. *Tough* v. *Ives*, 162 Conn. 274, 283, 294 A.2d 67 (1972) (noting that court properly admitted into evidence complaint from companion action because it was statement "by a party in a prior action to which he was also a party"); *Kucza* v. *Stone*, 155 Conn. 194, 197, 230 A.2d 559 (1967) (pleadings in prior action brought by plaintiff admissible as admission in subsequent action). "The time has passed when allegations in a pleading will be treated as mere fictions, rather than as statements of the real issues in the [case] and hence as admissions of the parties." (Internal quotation marks omitted.) *Dreier* v. *Upjohn Co.*, supra, 196 Conn. 248.

"A motion to dismiss . . . properly attacks the jurisdiction of the court . . . ." *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991); see also *Sadloski* v. *Manchester*, 235 Conn. 637, 645–46 n.13, 668 A.2d 1314 (1995) (" '[t]he motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter' "). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts,[10] the court may look to their content for determination of the jurisdic-

---

[10] Practice Book § 10-31 (a) provides in relevant part: "This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record."

tional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988); see *Amore* v. *Frankel*, 228 Conn. 358, 366, 636 A.2d 786 (1994).

The plaintiff alleged, in the Southeast and Pringle complaints, both of which were before the trial court in the consolidated action, that he had tripped on a portion of a steel signpost after disembarking a public transportation bus[11] that had stopped *"at the shoulder"* of the road, approximately seven feet from the location of the defect. (Emphasis added.) We consistently have concluded that defects located in a road shoulder constitute a highway defect pursuant to § 13a-149. See *Hay* v. *Hill*, 137 Conn. 285, 288–89, 76 A.2d 924 (1950) (concluding that defect could exist in road shoulder eight to ten feet from road); *Rusch* v. *Cox*, supra, 10 Conn. Sup. 526 (noting that highway includes road shoulder and concluding that "the layout [of the highway] was such as almost to amount to a trap for those, who in the night season, might drive upon the shoulder for emergency use or in the exercise of unusual caution, due to the exigency of modern traffic"). Indeed, the road shoulder, "while not designed for ordinary vehicular traffic, [is] intended for use when need arises. . . . [It is] a part of the wrought portion of the highway . . . ." (Citation omitted.) *Griffith* v. *Berlin*, 130 Conn. 84, 87, 32 A.2d 56 (1943).

In the complaint in the Pringle action, the plaintiff claimed that the defendants had "creat[ed] an unsafe and dangerous condition for the plaintiff and other pedestrians"; had "creat[ed] a hazard to the public"; and had not "paint[ed] said protruding sign post . . .

---

[11] In the plaintiff's notice of intention to sue, he contended that he had tripped as he disembarked the bus.

so that it would have been visible to the plaintiff and other pedestrians traversing said area . . . ." The plaintiff also asserted, both in his notice of intention to sue and in his complaint in the Southeast action that the town had "[a]llowed buses to stop and disembark passengers, like the plaintiff, at the location where the plaintiff [had fallen] thus exposing bus passengers to an unreasonable risk of injury . . . ." In addition, he noted that he was required to disembark on the grassy area because there was "no sidewalk or appropriate spot for a pedestrian to disembark from a bus."

The supporting affidavits filed by the defendants disclosed that the location of the alleged defect was within the highway right-of-way, located on the shoulder of the road, and that the town was responsible for maintaining the highway shoulder. The defendants also submitted to the trial court the lease agreement between the state and the town that established that the town had a duty to maintain the highway shoulder through its employees, officers or agents. The plaintiff did nothing to contradict these factual assertions.

In *Baker* v. *Ives*, supra, 162 Conn. 295, this court addressed a situation similar to the facts alleged herein. The plaintiff in *Baker* had been injured by an alleged defect thirty-two feet from the edge of the paved highway, thus, not within the traveled path of the highway, but *within the state right-of-way line.* Id., 297. She brought an action under General Statutes § 13a-144[12]

---

[12] General Statutes § 13a-144, which affords a right of recovery similar to that under § 13a-149 and is subject to the same limitations; *Serrano* v. *Burns*, 248 Conn. 419, 727 A.2d 1276 (1999); provides: "Damages for injuries sustained on state highways or sidewalks. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner

against the state highway commissioner and, after a jury trial, the jury returned a verdict in her favor. Id., 296. The highway commissioner moved to set aside the verdict, and the trial court denied that motion. Id. On appeal, this court affirmed the trial court's ruling. Id., 302.

In *Baker*, the court determined that it was proper for the jury to conclude that the plaintiff's injuries had been caused by a highway defect within the meaning of § 13a-144. In reaching that conclusion, the court noted that, "it was reasonably to be expected that after parking her car the plaintiff would cross the dirt and grass area to reach the sidewalk. The fact that the defective

in the Superior Court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the Comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the Comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the Attorney General and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

condition was in an area which an occupant of an automobile was likely, and in fact encouraged, to use is an important consideration." Id., 301–302. The court concluded that, in addition to the fact that the plaintiff had fallen in an area *"within the boundaries of the state right-of-way line"*; (emphasis added) id., 297; "the proximity of the defect to the paved portion of the highway in conjunction with the fact that the locus of the fall was in an area where occupants of vehicles were invited by the state to park their cars for the purpose of walking from their cars to the stores in the vicinity warrant[ed] the conclusion that [the] defect was 'in, upon, or near the traveled path' so as to 'obstruct or hinder one in the use of the road for the purpose of traveling thereon' . . . thereby allowing recovery under § 13a-144." (Citation omitted.) Id., 302 n.3.

In the present case, as in *Baker*, the alleged defect was within the town right-of-way line. This is significant because "[w]hether the place of injury is within the . . . right-of-way line is the threshold inquiry" in determining whether the condition complained of falls under § 13a-149. *Serrano* v. *Burns*, 248 Conn. 419, 427 n.7, 727 A.2d 1276 (1999) (determining state's liability pursuant to § 13a-144). In addition, it is clear from the plaintiff's own allegations that the defective condition was in an area where bus passengers were likely, and in fact encouraged, to disembark; accord *Novicki* v. *New Haven*, 47 Conn. App. 734, 740, 709 A.2d 2 (1998) ("[s]ince the walkway on which the plaintiff was injured was on public property and led from a city street to a public school, it was reasonably anticipated that the public would make use of it"). Indeed, the plaintiff expressly stated that the defect was embedded in the shoulder of the road, only seven feet from the paved area, and that he was required to disembark onto the grassy area because there was no sidewalk or appropriate area for him to disembark. See *Hornyak* v. *Fair-*

*field*, supra, 135 Conn. 621 ("[t]he word 'road' as used in the statute has usually been construed to include a sidewalk"); *Caschetto* v. *Silliman & Godfrey Co.*, 126 Conn. 22, 24, 9 A.2d 286 (1939) (noting that term sidewalk is meant to apply to areas public uses for travel); cf. *Chazen* v. *New Britain*, 148 Conn. 349, 352, 170 A.2d 891 (1961) (finding no highway defect because plaintiff chose to cross area not intended for pedestrian travel, rather than using provided travel path). In addition, the plaintiff alleged as part of his complaint that the defective condition was a *hazard to the public and to disembarking bus passengers*. See *Serrano* v. *Burns*, supra, 429 ("facts showing that highway travelers are invited by the state to use a rest stop along the highway may establish that the use of such an area is so closely related to travel upon the highway that such an area is part of the state highway system"). Therefore, it is clear that the alleged defect was "in, upon, or near the traveled path so as to obstruct or hinder one in the use of the road for the purpose of traveling thereon" to bring it within the defective highway statute. (Internal quotation marks omitted.) *Baker* v. *Ives*, supra, 162 Conn. 302 n.3.

Despite the allegations in his complaint, the plaintiff maintains that he lacks the status of a "traveler," and, therefore, that he does not fall within the purview of § 13a-149. His argument is based upon this court's decision in *O'Neil* v. *New Haven*, 80 Conn. 154, 156, 67 A. 487 (1907), wherein the court concluded that the plaintiff lacked the status of a traveler because he had left the highway for a purpose other than traveling over the highway, and, consequently, that the defective highway statute was not implicated.

The plaintiff's reliance on *O'Neil* is misplaced. First, it is important to note that, in that case, the alleged defective condition, a weighing platform that collapsed while the plaintiff's vehicle was on it, was not on the

portion of the highway maintained for travel. The platform was situated such that no traveler would knowingly and intentionally make use of it as part of the highway. Id., 155–56. Second, the plaintiff in *O'Neil* was injured after "[h]e had voluntarily departed from the traveled way . . . ." Id., 156. Therefore, the court concluded that at the time of his injury, he was no longer a traveler. Id.

In the present case, the alleged defective condition was, by the plaintiff's own admissions, located in the road shoulder, which had been used knowingly and intentionally by departing bus passengers as part of the road. As we noted previously, the plaintiff himself expressly stated that the nature and location of the defect was such that it necessarily presented a public hazard to himself, pedestrians, and other disembarking bus travelers.[13] In addition, in contrast to the plaintiff in *O'Neil*, the plaintiff in this case was a traveler on the road at the time of his injury. Indeed, bus travel necessarily dictates that passengers disembark on the side of the road in connection with the use of the bus and for purposes of public travel. See *Alston* v. *New Haven*, 134 Conn. 686, 689, 60 A.2d 502 (1948) (concluding that defect in sidewalk constituted highway defect because it was located in part of walk that persons crossing street would "naturally use").

Finally, we address the plaintiff's contention that his complaint does not invoke § 13a-149 because it was brought against various municipal employees, officers or agents in their individual capacities. We conclude

---

[13] The plaintiff's reliance on *Chazen* v. *New Britain*, supra, 148 Conn. 349, is also misplaced. That case involved a plaintiff's unreasonable decision to cross an area of "[u]nmowed grass and weeds"; id., 351; that was not intended for pedestrian travel, rather than using a provided travel path. Id., 354. The plaintiff in the present case, however, was injured as a result of an alleged defect in the road shoulder, the only means provided to him for disembarking the public bus.

that a plain reading of the plaintiff's complaint reveals that the allegations against the defendants were asserted as a basis for imposing liability on the town. As such, the plaintiff's exclusive remedy is an action under § 13a-149.

The plaintiff's complaint was brought under § 52-557n (a) (1) (A), which imposes liability on a town for the negligence of its employees, officers, or agents while acting within the scope of their employment or contractual duties. The plaintiff sought recovery under the same statute in the Southeast companion action. In addition, in the Southeast action, the plaintiff contended that he had complied with the notice provisions of § 7-465, a statute that requires a municipality to indemnify its officers for their negligent acts. The plaintiff admitted in his motions to consolidate that both the Pringle and Southeast actions involved the same issues of law and fact.

To bring his complaint within § 52-557n (a) (1) (A), the plaintiff alleged that the town had leased from the state the property on which the alleged defect was located and that the town had agreed to maintain it. Pringle, in his capacity as chief of the Niantic fire department, Peretz, in his capacity as director of parks and recreation, and the Niantic Fire Department, Inc., in its capacity as lessee, "*as such*," were charged with the responsibility of maintaining the area of the alleged defect. (Emphasis added.) The plaintiff alleged that his injuries were "directly and proximately caused by the negligence of the defendants . . . *in the course of their contractual obligations or employment*" with the town. (Emphasis added.) These allegations track the language of § 52-557n (a) (1) (A), seeking to impose liability on the town for the negligent acts of its employees, officers, or agents while they were acting within the scope of their employment or contractual duties to maintain the area on which the alleged injury occurred. Therefore, it

is clear that the plaintiff's claims against the defendants were a basis for imposing liability on the town. Having determined that the plaintiff's injuries resulted from conditions constituting a highway defect, we conclude that the plaintiff's exclusive remedy against the defendants is pursuant to § 13a-149. *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 179 (§ 52-557n construed "to provide that an action under . . . § 13a-149 is a plaintiff's exclusive remedy against a municipality or other political subdivision 'for damages resulting from injury to any person or property by means of a defective road or bridge' "; also precludes joint action for damages against municipality and its officer pursuant to § 7-465 [a], as means of circumventing § 13a-149).

It is clear to this court, therefore, both from the express words employed by the plaintiff and from the unchallenged affidavits of the defendants, that the dangerous condition complained of constitutes a highway defect and that the defendants were responsible for keeping the area of the alleged injury in repair. Therefore, § 13a-149 necessarily is invoked. As a condition precedent to maintaining an action under § 13a-149, a plaintiff must provide a municipality with notice within ninety days of the accident. See footnote 1 of this opinion; *Martin* v. *Plainville*, supra, 240 Conn. 109; *Pratt* v. *Old Saybrook*, 225 Conn. 177, 180, 621 A.2d 1322 (1993); *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 185.

In this case, it is undisputed that the plaintiff did not provide *any* written notice to the defendants within the requisite time period. Because he failed to comply with the notice requirements of § 13a-149, the trial court lacked subject matter jurisdiction over the action. See *Pratt* v. *Old Saybrook*, supra, 225 Conn. 180–81 ("giving of notice sufficient to satisfy the requirements of the statute is a condition precedent to maintenance of an action under it"; whether notice insufficient due to ref-

erence to wrong statute); *Hillier* v. *East Hartford*, 167 Conn. 100, 106, 355 A.2d 1 (1974) (recognizing that whether plaintiff complied with notice provisions of § 13a-149 is relevant to court's jurisdiction over subject matter of action); *Marino* v. *East Haven*, 120 Conn. 577, 578–79, 182 A. 225 (1935) (plaintiff who fails to comply with notice requirement cannot maintain cause of action against municipality). Accordingly, we conclude that the trial court properly dismissed the complaint.

## II

The plaintiff further contends that § 13a-149 is unconstitutionally vague as applied to the facts of this case and that it improperly deprived him of a remedy for his injuries. We conclude that § 13a-149 is not void for vagueness.

"As a threshold matter, it is necessary to discuss the applicable standard of review. 'A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity.' " *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 322, 732 A.2d 144 (1999), quoting *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 758, 529 A.2d 1276 (1987). To demonstrate that § 13a-149 is unconstitutionally vague as applied to him, the plaintiff therefore "must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, supra, 322. "[T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 777, 695

A.2d 525 (1997). "If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) Id., 778.

With these principles in mind, we turn to the facts and circumstances of the plaintiff's void for vagueness claim. In so doing, "our fundamental inquiry is whether a person of ordinary intelligence would comprehend" the meaning of a highway defect under § 13a-149. Id.

The plaintiff maintains that § 13a-149 is unconstitutionally vague because it is "completely devoid of any definition of a 'road' or when a 'road' is 'defective.' " This contention is without merit. The highway defect statute has been interpreted consistently by this court so as to provide the plaintiff fair warning as to its meaning. It is well settled that claims involving highway defects must be brought pursuant to § 13a-149. *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 197–98. The term "defect" and the adjective "defective" have been used in statutes defining the right to recover damages for injuries due to public roads or bridges in Connecticut since 1672. *Bacon* v. *Rocky Hill*, 126 Conn. 402, 404, 11 A.2d 399 (1940). These words have "continued ever since as the basis in the statute upon which liability rests." Id. Moreover, we consistently have interpreted § 13a-149 to include defects located outside the paved portion of the highway. See *Baker* v. *Ives*, supra, 162 Conn. 300 (noting that highway defect is "an object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that

result" [internal quotation marks omitted]). Contrary to the plaintiff's assertion, the analysis under § 13a-149 centers on the word "defect" and not on the word "road." Id., 299–300, 303; *Hay* v. *Hill*, supra, 137 Conn. 288–89.

As we stated previously herein, the undisputed facts in this case clearly indicate that the plaintiff allegedly was injured by means of a highway defect. The plaintiff expressly stated that he was injured while disembarking a public bus on a grassy shoulder that was being used as a bus stop. The extensive case law interpreting § 13a-149 afforded the plaintiff fair warning that his claim would fall within the parameters of the defective highway statute.

In addition, we determine that the plaintiff has not been improperly deprived of a remedy. Indeed, § 13a-149 provides redress to plaintiffs for claims arising from highway defects. See *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 196–97 (concluding that § 13a-149 is exclusive remedy for "injuries arising out of highway defects"). Accordingly, as the defendants correctly maintain, "the plaintiff must present his claim within the parameters and meet the requirements of that statutory cause of action."

We conclude that the plaintiff has failed to meet his burden of proving beyond a reasonable doubt that § 13a-149 is unconstitutionally vague. Further, the plaintiff has not been improperly deprived of a remedy because § 13a-149 affords redress for injuries encompassed within its terms.

The judgment is affirmed.

In this opinion the other justices concurred.